KELLEY J. SHARKEY
_____

Attorney at Law                              26 Court Street - Suite 2805
                                             Brooklyn, New York  11242
                                             Tel: (718) 858-8843
                                             Fax: (718) 875-0053

April 24, 2013

The Honorable Thomas P. Griesa
United States District Court
500 Pearl Street
New York, New York 10007

      Re: <u>U.S. v. Mohammad Shabaz Khawar</u>   10 Cr 1082 (TPK)

Dear Judge Griesa:

  I write on behalf of my client, Mohammad Shabaz Khawar, to request that the Court be as merciful as possible and sentence him to a term of imprisonment no greater than necessary to comply with the sentencing directives of 18 U.S.C.§3553(a). Counsel for Mohammad Khawar believes that the Guideline Calculation reflected in the PSR and the Government's plea agreement while accurate, results in an unduly harsh sentence for this young man. Under the auspices of 18 U.S.C 3553, Counsel for Mohammad Khawar requests a sentence below that recommended by the advisory Guideline range.

I. <u>ADVISORY GUIDELINE COMPUTATIONS</u>

By plea agreement all parties agree to the following advisory Guidelines calculation with regard to Mohammad Khawar:

Base offense level:  **<u>6</u>** §2B1.1(a)(2)

Guideline Loss Amount:  **<u>+20</u>** §2B1.1(b)(1)(K)

Conduct occurred outside the U.S. and involved sophisticated means: **<u>+2</u>** §2B1.1(b)(10)

1

Unauthorized Access Devices: **+2** §2B1.1(b)(11)

Adjustment for Timely Acceptance of Responsibility: **- 3** §3E1.1(a) and (b)

Total: 27

Mr. Kahwar's criminal history category is I and the stipulated sentencing Guidelines range is 70 to 87 months. The defense has agreed to the above advisory estimate as accurate, but for the reasons discussed below believes Mohammad Kahwar should be given a below guideline sentence.

II.     PERSONAL HISTORY

Mohammad Kahwar is very protective of his family and grateful for the love and support they have shown to him.  Since I was first assigned to this matter, Mr. Kahwar has taken responsibility for his conduct and has represented that nothing but his bad judgement led to his criminal activity.  During our initial conversations, my client described a conventional upbringing in London that did little to explain how he became involved in the offense charged. It wasn't until I spoke with his physically disabled mother in London (we have spoken and exchanged e mails on numerous occasions) that I learned his childhood contained many challenges. Mohammad Kahwar was raised on the outskirts of London in Walthamstow. The family lived in Council Housing (public housing in the U.S.) his entire life and his neighborhood was a rough one. His father is from Pakistan, his mother was born in London but is of Pakistani origin. Their's is a culturally traditional family where women defer to the men (father, brothers, husband) in their lives. Growing up, Mohammad's mother describes his dad as an emotionally distant presence in his life. When Mohammad was ten years old his father was arrested on drug related charges and was incarcerated until the time of Mohammad's thirteenth birthday. Mohammad was a well behaved student until the time he entered secondary school (high school in the U.S.) in the U.K. It was around this time, he fell in with the "wrong crowd." He was able to maintain good grades, but he lacked confidence and was often characterized as a jokester or clown by his teachers. During that period his father's circumstances were known by his peers in the neighborhood and he was sometimes taunted about it. Mohammad's mother believes he became involved with a rougher crowd in order to prove himself immune to the consequences of his father's incarceration.  Upon his return from prison, Mohammad's father exercised little discipline over the teen and

Mohammad's older brother was largely unavailable to help him as he was working to complete school and obtain employment. Mohammad is very bright, did well in school without much effort and graduated secondary school with a scholarship to college. He was ill prepared for college, as he had no disciplined work habits. Still he did reasonably well, but left school to work.

After he left college, he was recruited into the conspiracy by friends he knew from his neighborhood. His participation in the crime was the product of an immature and undisciplined character. Traits, I suggest, he has radically changed for the better. He deeply regrets his participation in the illegal activity and does not minimize the harm he has caused. For instance after his arrest, Mohammad's longtime girlfriend broke off contact at her parent's insistence and she was married to another suitor by parental arrangement. He is very close with his mother who is disabled and emotionally devastated by his arrest. She has not seen him since his extradition, but the two correspond by e mail often. Mrs. Kahwar often contacts me to check up on her son.  According to custom, she has arranged another marriage for him with a young woman from the family's village in Pakistan.  Mohammad is a respectful and amicable suitor, more than appreciative of his family's intervention on his behalf.

My client is quick to be helpful to others. While incarcerated at the M.C.C. he has tutored other inmates studying for their GED (see attached certificates) and has lent advice and assistance to inmates on his unit. I know this firsthand, as I previously represented another inmate from Europe who had great difficulties adjusting to life at the MCC. That client was severely depressed and could not bring himself to seek help from the mental health staff at the MCC.  He later informed me that another "fellow from London helped me... when I just couldn't take it anymore..."  When I asked who had assisted him, the answer was Kahwar.

Mohammad Kahwar is a smart, nice, family oriented young man. He admittedly engaged in illegal conduct much to his own regret and the emotional devastation of his mother. Upon release from jail, he has the emotional support of his family and real and significant job prospects made available by friends of his family (see attached letters). An extended incarceration of this young man will do nothing to further the aims announced under the guidance of 18 U.S.C. 3553 and will only serve to isolate and potentially harm Mr. Kahwar. Since his extradition, he has had no visitor except defense counsel. He communicates with his family and fiancé by e mail. The defense respectfully requests that the Court consider the unique circumstances of the

defendant's life which justify a sentence reduction under 3553(a).

### III. THE CRIME OF CONVICTION

Mohammad Kahwar plead guilty to Court Four of the indictment - Conspiracy to Commit Access Device Fraud, 18 U.S.C. 1029(a). He was arrested on April 11, 2011 in Utrecht, Netherlands, extradited and arrived in the Southern District on July 13, 2013. He asks that the court take the fifteen months incarceration in the Netherlands on these charges into consideration when sentencing him. The defense requests the Court employ mercy and sentence this young man below the advisory Guideline.

### IV. MOHAMMAD KAHWAR ASKS THE COURT TO IMPLEMENT THE SENTENCING GOALS OF 18 U.S.C. 3553(a).

Apart from departures under the now "advisory" Guidelines, 18 U.S.C.§3553(a) requires courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2 of this subsection" Section 3553(a)(2) states that such purposes are:

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)   to afford adequate deterrence to criminal conduct;

( C )   to protect the public from further crimes of the defendant; and

(D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553 (a) further directs the sentencing court to consider the nature and circumstances of the offense and the history and characteristics of the defendant, the kinds of sentences available, the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offense.

Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. §3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, a sentencing judge is required to "recognize[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation."

Under 18 U.S.C. §3661, "[n]o limitation shall be placed on the information concerning the background, character or conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

Here, a below Guideline sentence which also credits the time (fifteen months) the defendant was incarcerated on these charges in Europe is appropriate. Mr. Kahwar admittedly engaged in unlawful activity and he deeply regrets that his actions helped cause financial disarray to individuals and institutions. In our conversations, he reflects on the immaturity he exhibited in becoming involved in the charged conspiracy.  He has been separated from his family since April 2011 and appropriately holds himself responsible for the anguish suffered by his ailing mother due to his arrest, and the heartbreak experienced by the termination of his initial engagement.

The directives of <u>Booker,</u> <u>United States</u> v. <u>Crosby</u>, 397 F.3d 103(2nd Cir. 2005), their progeny and §3552(a) make clear that courts must consider all of the factors in §3553 (a). An analysis of these factors in this case, militates in favor of Mohammad Kahwar and the imposition of a below Guideline sentence.

### A.   THE NATURE AND CIRCUMSTANCES OF THE OFFENSE

Fully aware of  of the serious nature of Mohammad Kahwar's crime of conviction, the defense believes that the Guideline sentence is not appropriate for this defendant under this specific set of circumstances. The defense respectfully requests that the arguments set forth in section I of this memorandum be incorporated herein.

### B.   THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

The defense would like to incorporate by reference the Personal History

Section II of this letter.

    C.    THE KINDS OF SENTENCE AVAILABLE

The maximum term of imprisonment on Count Four is seven and one half years. The Court can also impose a supervised release of up to three years, but it is expected the defendant will be deported at the conclusion of his sentence.

    D.    THE GUIDELINES SENTENCING RANGE AND GUIDELINES POLICY STATEMENT

The Supreme Court's decision in Booker/Fanfan and the cases interpreting that ruling require sentencing courts to treat the Guidelines as one of a number of sentencing factors set forth in 18 U.S.C.§3553(a). As the Supreme Court held, the now revised Sentencing Reform Act ("SRA")

"requires a sentencing court to consider Guideline ranges, *see* 28 U.S.C.A.§3553(a)(4) ( Supp. 2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, Booker, 125 S.Ct. At 757.

Under the now "advisory" Guidelines, the sentencing court is not bound by the formerly applicable departure rules when it bases its decision to impose a non-Guidelines sentence on the other SRA factors. Thus, in determining an appropriate sentence in this case, the imposition of a Guidelines sentence gives too great weight to the Guidelines calculus and too little weight to the other factors noted herein.

    V.    REFLECTING THE SERIOUSNESS OF THE OFFENSE, PROMOTING RESPECT FOR THE LAW, PROVIDING JUST PUNISHMENT, DETERRING CRIMINAL CONDUCT, PROTECTING THE PUBLIC

18 U.S.C.§3553(a) requires courts to impose a sentence "sufficient, but not greater than necessary" to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training. All of these sentencing objectives can be attained by imposing a non-Guidelines sentence.

6

CONCLUSION

As noted by Judge Hellerstein in United States v. Carvajal, ___ F. Supp. 2d___, 2005, U.S.Dist. Lexis 3076, (S.D.N.Y. February 22, 2005) "rehabilitation is a ...goal of punishment... Hope is the necessary condition of mankind, for we are created in the image of God. A judge should be hesitant before sentencing so severely that he destroys and takes away all possibility of useful life. Punishment should not be more severe than that necessary to satisfy the goals of sentencing."

In this instance deterrence, correction, and rehabilitation can be achieved for this young man with his prompt reintroduction into society in a positive manner, gainfully employed, and surrounded by family. He entered into the criminal conspiracy as an immature young man seeking adventure and will leave it much chastened. He has grown up since his arrest in April 2011 and has come to understand the harm he has caused to unknown victims, his family, and himself.

Thank you for your consideration of the argument contained herein. I look forward to answering any questions the Court may raise.

                    Respectfully yours,

                    KELLEY J. SHARKEY

(enclosures sent under separate cover)

cc: United States Attorney
    Southern District of New York
    One St. Andrew's Plaza
    New York, New York 10007
    Attn: AUSA Negar Tekkei and AUSA Matthew Schwartz